1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   FRANK MONACO BAZZO,                    Case No. 1:21-cv-01343-KES-CDB (PC)

12              Plaintiff,                   **FINDINGS AND RECOMMENDATIONS
                                            REGARDING THE PARTIES' CROSS
13        v.                                MOTIONS FOR SUMMARY JUDGMENT**

14   S. GATES,                              (Docs. 64 & 65)

15              Defendant.                   **ORDER DENYING PLAINTIFF'S
                                            MOTION FOR ENTRY OF DEFAULT**
16
                                            (Doc. 69)
17

18

19        Plaintiff Frank Monaco Bazzo is a state prisoner proceeding pro se in this civil rights

20   action filed under 42 U.S.C. § 1983.

21   **I.      INTRODUCTION**

22        The Court issued its Discovery and Scheduling Order on December 11, 2023. (Doc. 53.)

23   Relevant here, the deadline for filing dispositive motions was extended from October 21, 2024, to

24   November 12, 2024. (Doc. 63.)

25        On October 30, 2024, Plaintiff filed a motion for summary judgment, or alternatively, for

26   summary adjudication. (Doc. 64.) On November 12, 2024, Defendants Bobbala and Gates filed a

27   motion for summary judgment. (Doc. 65.)

28        On November 20, 2024, Defendants filed their opposition to Plaintiff's motion for

1    summary judgment. (Doc. 66.) On November 27, 2024, Plaintiff filed his opposition to

2    Defendants' summary judgment motion. (Doc. 67.) That same date, Plaintiff filed a document

3    titled "Notice of Motion and Motion for Entry of Default Pursuant Rand Warning Due to

4    Defendants' Failure to Oppose or Reply to Bazzo's Motion for Summary Judgment or in the

5    Alternative, Adjudication filed October 21, 2024. Alternatively, Reply and Opposition to Moot

6    Motion for Summary Judgment by Defendants." (Doc. 69.) Plaintiff also filed a motion for

7    preliminary injunction on this date. (Doc. 70.)

8         On December 4, 2024, Plaintiff filed a document titled "Response by Bazzo to

9    Defendants' Statement of Undisputed Facts in Opposition to Their Response to Bazzo's

10   Summary Judgment Motion." (Doc. 71.)

11        On December 17, 2024, Defendants filed their oppositions to Plaintiff's motions

12   concerning entry of default and preliminary injunction. (Docs. 73 & 74.)

13        Lastly, on January 23, 2025, Plaintiff filed a document titled "Reply to Defendants

14   Opposition to Bazzo's Mandatory Injunctive Relief to be Transferred to a Medical Facility."

15   (Doc. 75.)

16        **II.    APPLICABLE LEGAL STANDARDS**

17            *Motions for Summary Judgment*

18        Summary judgment is appropriate when it is demonstrated that there "is no genuine

19   dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

20   Civ. P. 56(a). A party asserting that a fact cannot be disputed must support the assertion by

21   "citing to particular parts of materials in the record, including depositions, documents,

22   electronically stored information, affidavits or declarations, stipulations (including those made for

23   purposes of the motion only), admissions, interrogatory answers, or other materials...." Fed. R.

24   Civ. P. 56(c)(1)(A).

25        Summary judgment should be entered, after adequate time for discovery and upon motion,

26   against a party who fails to make a showing sufficient to establish the existence of an element

27   essential to that party's case, and on which that party will bear the burden of proof at trial. *See*

28   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an

2

essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of their pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists or shows that the materials cited by the movant do not establish the absence of a genuine dispute. *See* Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Further, the opposing party must also demonstrate that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987). In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed. *See Anderson*, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *See Matsushita*, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

1  show that there is some metaphysical doubt as to the material facts.... Where the record taken as a

2  whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine

3  issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

### *Eighth Amendment: Conditions of Confinement*

5    The Eighth Amendment protects prisoners from inhumane methods of punishment and

6  from inhumane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825 (1994); *Morgan v.*

7  *Morgensen,* 465 F.3d 1041, 1045 (9th Cir. 2006). Thus, no matter where they are housed, prison

8  officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing,

9  sanitation, medical care, and personal safety. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)

10  (quotation marks & citations omitted). To establish a violation of this duty, a prisoner must first

11  demonstrate an objectively serious deprivation, one that amounts to the denial of "the minimal

12  civilized measures of life's necessities." *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996)

13  (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). Second, a prisoner must demonstrate

14  that prison officials acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 303

15  (1991); *Johnson*, 217 F.3d at 733. A prison official is liable for denying an inmate humane

16  conditions of confinement only if "the official knows of and disregards an excessive risk to

17  inmate health and safety; the official must both be aware of facts from which the inference could

18  be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

19  *Farmer*, 511 U.S. at 837.

20    The Supreme Court held that "extreme deprivations are required to make out a conditions-

21  of-confinement claim. Because routine discomfort is 'part of the penalty that criminal offenders

22  pay for their offenses against society,' 'only those deprivations denying the minimal civilized

23  measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment

24  violation.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citations omitted).

25    Adequate food is a basic human need protected by the Eighth Amendment. *Hoptowit v.*

26  *Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982) (abrogated on other grounds by *Sandin v. Conner*, 515

27  U.S. 472 (1995)). "Food is one of life's basic necessities," and the government is obligated to

28  provide those in its custody "with adequate sustenance on a daily basis." *Foster v. Runnels*, 554

4

F.3d 807, 812-14 (9th Cir. 2009). "The Eighth Amendment requires only that prisoners receive food that is adequate to maintain health; it need not be tasty or aesthetically pleasing." *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993). As another judge of this Court has observed, the state is obligated to provide "'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it,'" and "the state health code, while not establishing 'constitutional minima,' is relevant in making a finding regarding the constitutionality of existing conditions." *Jackson v. Walker*, No. CIV S-06-2023 WBS GGH P, 2009 WL 1743639, at *8 (E.D. Cal. June 17, 2009) (quoting *Ramos v. Lamm*, 639 F.2d 559, 570–71 (10th Cir. 1980), *cert denied*, 450 U.S. 1041 (1981)).

Sustained deprivation of food that results in pain without any penological purpose can amount to cruel and unusual punishment. *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir. 2002). "In the same way that an inmate relies on prison officials to provide appropriate medical care … and protection from assaults by other inmates … inmates rely on prison officials to provide them with adequate sustenance on a daily basis. The repeated and unjustified failure to do so amounts to a serious depravation." *Foster*, 554 F.3d at 814 (citations omitted). *See, e.g.*, *Franklin v. State of Or., State Welfare Div.*, 662 F.2d 1337, 1347 (9th Cir. 1981) (holding that allegations that prison officials ignored inmate's request for food after he informed them that he "was having an insulin reaction" sufficient to state a claim provided officials' actions were undertaken with deliberate indifference) (citing *inter alia Ramos*, 639 F.2d at 559).

### Eighth Amendment: Deliberate Indifference to Serious Medical Needs

Prison officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t] to [a prisoner's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A medical need is serious if failure to treat it will result in "'significant injury or the unnecessary and wanton infliction of pain.'"" *Peralta v. Dillard*, 744 F.3d 1076, 1081-82 (9th Cir. 2014) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc)).

To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff must first "show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendants' response to the need was deliberately indifferent." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett*, 439 F.3d at 1096).

As to the first prong, indications of a serious medical need "include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (citation & internal quotation marks omitted); accord *Wilhelm*, 680 F.3d at 1122; *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) ("Examples of serious medical needs include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain").

As to the second prong, deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Farmer*, 511 U.S. at 835 (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). Deliberate indifference is shown where a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. In medical cases, this requires showing: (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. *Wilhelm*, 680 F.3d at 1122 (quoting *Jett*, 439 F.3d at 1096). "A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." *Jett*, 439 F.3d at 1096 (citing *McGuckin*, 974 F.2d at 1060).

Deliberate indifference is a high legal standard. *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person

6

'must also draw the inference.'" *Id*. at 1057 (quoting *Farmer*, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id*. (quoting *Gibson v. Cnty. of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)). To prevail on a deliberate indifference claim, a plaintiff must also show that harm resulted from a defendant's wrongful conduct. *Wilhelm*, 680 F.3d at 1122; *see Jett*, 439 F.3d at 1096.

### III.    THE FACTUAL ALLEGATIONS & THE SCREENING FINDINGS

Plaintiff alleges documentation and testing indicate he suffers from "articulated anaphylactic reaction to peanuts – gastric intolerances to spicy foods – peppers-onions-beans and shell fish." He asserts he has "IBSD," a hiatal hernia, and "Schatsky ring that causes GERD in addition to hyperacidity controlled by Prevacid BID." Plaintiff contends that since 2010 the prison system has failed to provide him "sustenance and appropriate protein nutrition" by failing to substitute "offending foods" or allowing him to purchase "ENSURE and food stuff in catalogs allowed to women only." He further states he "is now a Covid long hauler and has lost presently 60% of his taste sense …." Plaintiff alleges he "has missed hundreds of meals whereby the offending agents (proteins) were not replaced," causing "loss of muscle mass and other existential pathologies." Plaintiff also contends he has been denied a kosher diet. (Doc. 23.)

At screening, the Court construed Plaintiff's first amended complaint to assert an Eighth Amendment conditions of confinement claim and an Eighth Amendment deliberate indifference to serious medical needs claim. (Doc. 25 at 8-13.) It found Plaintiff stated cognizable Eighth Amendment claims against Defendants Gates and Bobbala and Does 1 through 5 but failed to state any other cognizable claims against any other named defendant. (*Id*. at 13-15.) In response to the screening order, Plaintiff stated he did not wish to file an amended complaint, and accordingly, the undersigned issued findings and recommendations that this action proceed only on the claims found cognizable. (Doc. 27.) On June 30, 2023, the formerly assigned district judge adopted those findings and recommendations, noting this action was to proceed only as to Plaintiff's Eighth Amendment conditions of confinement and deliberate indifference to serious medical needs claims against Defendants Gates and Bobbala, and unknown Does 1 through 5, and

1    that all remaining claims were dismissed. (Doc. 28.)

2    ### IV.    SUMMARY OF THE PARTIES' BRIEFING

3    *Plaintiff's Motion for Summary Judgment (Doc. 64)*

4    Plaintiff argues that: (1) this Court has already assessed deliberate indifference; (2) the

5    government must provide prisoners with proper nutrition, not toxic food; (3) Defendants are

6    liable by failing to provide Plaintiff with proper nutrition based on a pure medical issue; (4)

7    Plaintiff has accumulated evidence to support his genuine nutritional needs since 2016; (5)

8    Defendants have summarily refused to correct and/or allow constitutional violations to continue

9    about which there is no dispute because their defenses were not advanced or are not supported;

10   (6) during discovery, Defendants failed to meaningfully explain their roles or explain their

11   defenses; (7) Defendant Gates violated Plaintiff's due process rights by failing to correct the

12   violation asserted in administrative appeals and Defendant Bobbala was deliberately indifferent

13   for failing to correct "real travails and unnecessary suffering" and by creating a "risk of

14   pathological exacerbation and unnecessary suffering;" and (8) Defendants' knowledge of a

15   constitutional violation "by tacit acquiescence should not be condoned" because inmates "are at

16   best impotent to have choices or decisions for their benefit in health and welfare" and the

17   Defendants "are not particularly anointed to do as they please; their actions are "non-defensible

18   on their faces."

19   ### Defendants' Opposition

20   Defendants contend Plaintiff's summary judgment motion should be denied because the

21   evidence shows they did not subject him to inhumane conditions of confinement nor were they

22   deliberately indifferent to Plaintiff's medical needs. (Doc. 66.)

23   ### Plaintiff's Reply[1]

24   Plaintiff alleges Defendants have improperly opposed his summary judgment motion by

25   filing an "incompatible" one of their own and asserts Defendants have "waived their objection

26   and/or opposition … by their failure to timely respond according to FRAP 56 and RAND." (Doc.

27   

28   _____

[1] Plaintiff's filing also serves as his opposition to Defendants' motion. Thus, here, the Court summarizes Plaintiff's position only to the extent it directly replies to Defendants' opposition to his motion. (Doc.

68.)

Plaintiff's Filing of December 4, 2024

Following the timely reply above, on December 4, 2024, Plaintiff also filed a document titled "Response by Bazzo to Defendants' Statement of Undisputed Facts in Opposition to Their Response to Bazzo's Summary Judgment Motion." (Doc. 71.)

Plaintiff states: "Obviously, Bazzo globally objects to defendants' disputed facts since not supported by the facts of the case regarding a nutritional necessity …." He contends Defendants "have failed to establish any fact that has any tension with Bazzo's – in the face – undisputed facts that have had gepmetry since 2010." Plaintiff asserts he has cited to relevant pleadings and "whatever documentation had been gathered from defendants who put up either walls of moot and conclusory affirmative actions – per se – not supportive – but also refused asked admissions and further documentation under the flag of immunity or non duty to do so."

Plaintiff states he "only relies on one – indivisible – perennial – uncontroverted fact since 2010: 'THE NECESSITY OF A DIET BECAUSE OF MANY PRISMATIC FEATURES OF HIS PHYSIO-ANATOMY.' PERIOD!" He contends he has proven his claims "for 14 years in several courts" only to be thwarted by the "PRO BONO gorilla freely donated to CDCR's psychotic minions who are immune from opening their wallets every time they gleefully, torture a prisoner."

The Court construes Plaintiff's filing to dispute Defendants' statement of undisputed fact numbers 1 through 6, 8, 10, 11, and 19 through 26, and to partially dispute numbers 9, 12, 13, 17 and 18. Numbers 7 and 14 through 16 are not disputed.

***Defendants' Motion for Summary Judgment (Doc. 65)***

Defendants argue they are entitled to summary judgment because Defendant Bobbala was not involved in Plaintiff's medical care, nor has Plaintiff presented any evidence to show Bobbala deprived Plaintiff of the minimal measures of life's necessities or how she acted with deliberate indifference. Further, they contend Defendant Gates did not personally review Plaintiff's headquarters level grievances and thus had no personal involvement. Defendants maintain that even had Gates reviewed them, she is not a medical professional and would not be able to

1    determine whether Plaintiff required a special diet. Finally, Defendants contend the grievance

2    procedure establishes only a procedural right and does not confer a substantive right to inmates

3    that would serve as a basis for liability in this civil rights action.

4                                Plaintiff's Opposition[2]

5           Plaintiff disputes Defendants' statement of disputed facts, stating he "has already stated

6    the issues of no disputed facts in his" own motion, and contends Defendants' "proposed willy-

7    nilly" facts "using a plethora of perfunctory 'exhibited medical documents'" that are irrelevant.

8    Next, Plaintiff asserts he should have been noticed pursuant to HIPPA that his personal medical

9    records would be made public without a court order and that the progress notes "are exquisitely

10   outside of the complaint of necessity to be fed" or not to be fed toxic food. He maintains the

11   progress notes support "the undisputable anatomical structure aberration of GERD" and other

12   conditions establishing his diet is constitutionally inadequate. Plaintiff denies having an EpiPen in

13   prison as reflected in the Progress Notes and disputes that a nurse practitioner "can determine

14   anything contrary to medical practice; he maintains Dr. Estoch "made the absolute determination

15   that [he] needed a medical diet."

16          Plaintiff also argues Defendant Gates' position as Chief of Risk Management is a "fixed

17   nexus" as concerns causation, that she alone denies all grievances as a matter of policy, and

18   refused to answer interrogatories and requests for admissions "using inane affirmative defenses

19   and implausible denials." He contends Gates did in fact sign a January 19, 2019, health care

20   response to his grievance and therefore she is lying. Even where others signed for Defendant

21   Gates, Plaintiff asserts she is ultimately responsible for the denial and bears the burden of proof

22   "of reasonableness." Next, Plaintiff argues Defendant Bobbala's declaration fails to explain her

23   functions as an administrator, "parrot[s] the allergy 'intolerance protocol of CDCR'" and "misses

24   the point" of his grievances. Plaintiff maintains it is not medically sound "to starve prisoners

25   allergic to intolerable foods" and maintains "it is guaranteed" that "serious professional Ph'd

26   Nutritionists" will disagree with Defendant Bobbala at trial. Plaintiff contends he cannot file a

27

28   _____
     [2] *See* n.1, *ante*; *see also* Doc. 68. Here, the Court summarizes the relevant filing as concerns Plaintiff's opposition to
     Defendants' summary judgment motion.

grievance against a chief medical officer at one prison from another prison. Plaintiff contends Defendant Bobbala is reticent to divulge her real function as the executive administrative medical officer and as a panelist who is responsible for "inmates' diet structuring in toto."

In conclusion, Plaintiff alleges Defendants' declarations "are DISPUTABLE TO THE MAX since misinterpreted-inaccurate and not responsive" to the issues he complains of.

## V.    PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS

In his summary judgment motion, under the heading "Deliberate Indifference Claim recognized by this court," Plaintiff offers the following facts as undisputed:

1. The government must provide adequate medical care to incarcerated persons and a failure to do so violates the Eighth Amendment, citing to *Estelle v. Gamble*, 429 U.S. 97, 2013 (1976)

2. Defendants had the requisite mental state, knowingly and acting under color of law, to understand, on one hand, Defendant Gates was consciously denying a remedy protected by the Eighth Amendment; on the other hand, Defendant Bobbala, a physician, swore the Hippocratic oath not to injure or interfere with sound medical prophylaxis

3. The only way Plaintiff can avoid injury, specifically a lethal anaphylactic reaction to an allergen, was to request a replacement of the peanut protein in his diet with another protein. This requires a special diet and is noted in Plaintiff's file and medical history

4. In a recent endoscopic examination by Dr. Hauch, a specialist gastroenterologist under CDCR contract, it was discovered via microscopic pathological examination that Plaintiff's gastric mucosa had changed into metaplastic disease, a precursor to stomach cancer, and at his age of 85, a death penalty

5. Defendants are able to have reasoned the validity of Plaintiff's medical needs considering Defendant Gates' final remedy denial based on her non-medical opinion and Defendant Bobbala's construction of prison menus dependent upon cost rather than nutritional value at a toxicity cost anathema to medical practice. Both Defendants were in a position to take the necessary steps to avert Plaintiff's injuries but failed to

do so intentionally and with deliberate indifference to a fellow human being and elderly prisoner suffering from medical aberrations. In addition, the causation of the metaplasia must be focused upon because it entertains toxicity to the cellular changes. The court should then, in the least, approach the causation issue with an individualized approach as to each Defendants' branch of expertise and responsibility weighing on the overall tree of proper health care reasonably expected by public policy forking out billions of dollars each year for the proper maintenance of CDCR's impotent wards

6. FRAP 56 allows a party to move for summary judgment, identifying claims of suit, on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The Third Circuit has taken into consideration "well pleaded averments" by claimants against summary judgment by CDCR's Attorney General motions for summary judgment. The very mission of a summary judgment procedure in this 14-year-old case, is to consider Plaintiff's averments since 2016 insisting with the same litany of medical care, denied by each cement walled brain, ultimately leading to a catastrophic disease. Thus, the solemnity of Plaintiff's pleadings vastly has outclassed the venal motives of no mea culpas from a host of Defendants, directly responsible for prisoners' welfare. In a jury trial, the facts would easily shock the conscience of each juror and judge

7. The court, by its own experience with CDCR cases – [filed by inmates] in pro per – must realize that denials are a matter of routine practice by the prisons deliberately supported by the likes of Defendants and conflicted by defense by the Peoples' $9,000,000,000 dollar behemoth AG Office Pro Bono

8. Plaintiff is allergic to peanut protein. CDCR's weekly menu contains four to five servings of peanut butter. CDCR's box lunches are not labeled, and thus, Plaintiff cannot consume them because of a lack of labeled ingredients; however, most snacks visibly contain peanut butter. Plaintiff suffers from GERD and cannot process foods that increase hydrochloric acid

12

9. It is medically undisputed that increase of gastric acid increases the change of hydrochlorophilic bacterium Helicobacter pylori, a per se carcinogen

10. For over 14 years Plaintiff has endeavored, at each prison to which he was involuntarily transferred, to seek a proper nutritional diet to no avail; his requests are always denied by Defendant Gates as the last resort to have a claim reasonably adjudicated

11. Defendant Bobbala was hired under contract with CDCR to oversee nutritional programs, such as "Heart Healthy Menus" and has unequivocally stated that "the menu given to the inmate population is toxic, causing all kinds of metabolic pathologies as well as emotional syndromes"

12. The above panel, comprised of registered dieticians and medical doctors approve of the 26 weeks of rotational menus that offer the same foods for years

13. CDCR's yearly cost for food for each prisoner is $1,000 out of the $160,000 allotted, 86% of the $18,000,000,000 per year used for nabob salaries and benefits, wasted to a totally failed (on purpose) system based on the industry of incarceration, not certainly correction or rehabilitation, and doubly certainly not on proper medical care (including nutrition) or Federal Receiver Kelso would not still be in place since 2005 at a salary of $600,000 per year on the back of taxpayers, for almost 20 years. Ludicrous at worst

14. According to the Health care nutritional board, described ante, the food purchased at auction must be given to the cheapest bidder at the expense of quality and higher preservatives content

15. Plaintiff has tried for 14 years to receive either a medical diet or a Kosher diet and was denied even after *In re Garcia* was decided by a court of higher authority, only because of the much higher cost of the Halal diet

16. Plaintiff has been diagnosed with Complete Intestinal Metaplasia of his gastric cell[s] that lead[s] to gastric cancer, whereby gastric resection is the remedy. Plaintiff has been scheduled for "gastric mapping" to discover the extent of the metaplasia, additional dysplasia, or malignancy. It is obvious that his new injury shall be dealt

1    with [in] the appropriate lawsuit on a later date and not intertwined with the case at bar

2    asking for compensation for money spent

3    (Doc. 64 at 11-15 [with minor edits to spelling, punctuation, grammar and formatting].)

### VI.    DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

Defendants identify the following undisputed facts in support of their motion for summary judgment:

1.  Dr. Bobbala holds the position of Chief Medical Executive at the California State Prison, Sacramento (CSP-SAC). (Doc. 65-5 ["Bobbala Decl."] ¶ 1.)

2.  Bazzo has never been incarcerated at CSP-SAC. (Doc. 78 ["Deposition of Bazzo"], 15:20-16:17, attached to Wilson Decl. as Ex. A.)

3.  Dr. Bobbala has never been involved in Bazzo's medical care. She never treated him. He did not submit any health care grievance that was received by CSP-SAC or which Dr. Bobbala would have ever responded to. (Bobbala Decl. ¶ 4.)

4.  With respect to whether Dr. Bobbala had any involvement in his medical care, Bazzo states: "I have no idea. She might have. I don't know." (Deposition of Bazzo, 42:10-13)

5.  Asked how Dr. Bobbala violated his constitutional rights, Bazzo stated: "How can I answer that? I mean I'm not there with her; I'm in prison." (Deposition of Bazzo, 43:15-22)

6.  When asked what evidence he had that Dr. Bobbala had been involved in his medical care, Bazzo stated: "You tell me. She's your defendant." (Deposition of Bazzo, 44:13-18)

7.  Gates held the position of Chief of the Health Care Correspondence and Appeals Branch within the California Correctional Health Care Services. (Doc. 65-4 ["Gates Decl."] ¶ 1.)

8.  The Health Care Correspondence and Appeals Branch is responsible for providing the headquarters-level response to health care grievances submitted by state prisoners. (Gates Decl. ¶ 2.)

14

9. Bazzo submitted a number of healthcare grievances related to his diet which received headquarters-level responses provided by the Health Care Correspondence and Appeals Branch. (Gates Decl., Exhibits A, B, & C.)

10. Headquarters-level responses to inmate health care grievances are prepared by staff of the Health Care Correspondence and Appeals Branch. Although the signature line of the responses generally included Gates's name, the responses to routine grievances were generally not prepared, reviewed, or signed by her. Instead, she has delegated to staff the authority to sign in her place. (Gates Decl. ¶ 6.)

11. As part of this litigation, Gates reviewed the health care grievances Bazzo submitted concerning his diet and his food allergies as well as the responses that were provided to those grievances. Her review found that she was not involved in reviewing and responding to Bazzo's grievances. The signatures on the headquarters-level responses are not Gates's signatures. Each includes a signature of another person, followed by the word "for" and then "S. Gates, Chief." Gates had no knowledge of Bazzo's grievance prior to his filing of this lawsuit. (Gates Decl. ¶ 7 and Exhibits A, B & C.)

12. Asked if Gates has ever been involved in his medical care, Bazzo stated: "You tell me." (Deposition of Bazzo, 47:17-20)

13. Gates is not a medical professional and does not have medical training. (Gates Decl. ¶ 8.)

14. Bazzo states that he is allergic to peanuts. (Deposition of Bazzo, 17:8-16)

15. He discovered this when he was six years old in approximately 1947. (Deposition of Bazzo, 17:21-25)

16. At that time, he stopped breathing and both his throat and tongue swelled up. (Deposition of Bazzo, 18:1-7)

17. Since then, he has avoided peanuts and has not had a reaction. (Deposition of Bazzo, 18:8-25)

18. A state prisoner's primary care provider (PCP), or designee, shall evaluate patients who request a special diet due to claimed food intolerance or allergy in order to verify

the presence of a food allergy or intolerance via objective clinical means. If the PCP determines the patient has a severe food allergy based on objective and verifiable information, the PCP shall determine whether the allergy can be appropriately managed by educating the patient to avoid the identified food or if other intervention, such as a nutrition supplement, is warranted. In extreme cases where the patient does not tolerate the supplement, the patient may require meals to be provided as a medical diet. (Bobbala Decl. ¶ 3.)

19. Bazzo was seen by a nurse practitioner on April 18, 2019. It was noted that he had a peanut allergy. He had an epi pen and was aware to avoid foods with peanuts. It was further noted that Bazzo "has not had any recent reactions with peanuts lately." No determination was made that he needed to be provided with any special diet. (Doc. 65-6 ["Soto Decl."], Ex. A, at 027-030.)

20. Bazzo was seen by a nurse practitioner again on May 13, 2019. He was diagnosed with a peanut allergy which was described as being stable, and it was noted that he had an epi pen which he denied having to recently use. No determination was made that he needed to be provided with any special diet. (Soto Decl., Ex. A, at 025-027.)

21. Bazzo was seen again by a nurse practitioner on June 5, 2019. He was diagnosed with a peanut allergy and advised to avoid peanut foods and peanuts. No determination was made that he needed to be provided with any special diet. (Soto Decl., Ex. A, at 023-024.)

22. Bazzo was again seen by a nurse practitioner on July 22, 2019. He was again diagnosed with a peanut allergy. It was stated that there had been no recent exposure to peanuts or reactions to them. Again, no determination was made that he needed to be provided with any special diet. (Soto Decl., Ex. A, at 019-022.)

23. Bazzo saw a nurse practitioner again on August 8, 2019. He stated that he "hates the food" at the prison. He was diagnosed with a peanut allergy, and the plan was again to avoid peanuts. No determination was made that he needed to be provided with any special diet. (Soto Decl., Ex. A, at 017-019.)

24. Bazzo was again seen by a nurse practitioner on September 10, 2019. He was
   diagnosed with a peanut allergy, and the plan was simply to avoid foods containing
   peanuts. No determination was made that he needed to be provided with any special
   diet. (Soto Decl., Ex. A, at 015-017.)

25. Bazzo saw a nurse practitioner again on November 26, 2019. He was diagnosed with a
   peanut allergy and it was found that he was stable on examination with no recent
   peanut exposure being reported. Once again, no determination was made that he
   needed to be provided with any special diet. (Soto Decl., Ex. A, at 010-014.)

26. Bazzo saw a nurse practitioner again on August 12, 2020. He was diagnosed with a
   peanut allergy and instructed to avoid peanuts. Once again, no determination was
   made that he needed to be provided with any special diet. (Soto Decl., Ex. A, at 006-
   009.)

(*See* Doc. 65-2.)

## VII.    FINDINGS REGARDING UNDISPUTED FACTS

In ruling on the cross motions for summary judgment and in its recitation of the undisputed facts below, the Court has only considered the evidence that it has determined to be admissible and not in dispute.[3] Where these findings cite evidence to which a party has objected, the objection is impliedly overruled. The Court declines to rule on objections to evidence on which it did not rely.[4]

The undersigned identifies the following facts as undisputed:

---

[3] *See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011) ("To survive summary judgment, a plaintiff must set forth non-speculative evidence of specific facts, not sweeping conclusory allegations); *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (a party may not rely on speculative or conclusory testimony contained within affidavits, pleadings, or moving papers to raise a genuine dispute of material fact in an effort to defeat summary judgment; *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("mere allegation and speculation do not create a factual dispute for purposes of summary judgment"); *Coverdell v. Dep't of Soc. & Health Servs.*, 834 F.2d 758, 762 (9th Cir. 1987) (recitations of unsworn factual allegations do not adequately oppose competent evidence presented in a motion for summary judgment); *Burch v. Regents of Univ. of California*, 433 F. Supp.2d 1110, 1119 (E.D. Cal. 2006) ("statements in declarations based on speculation or improper legal conclusions, or argumentative statements, are not facts and likewise will not be considered on a motion for summary judgment" (emphasis omitted)).

[4] "In motions for summary judgment with numerous objections, it is often unnecessary and impractical for a court to methodically scrutinize each objection and give a full analysis of each argument raised." *Capitol Records, LLC v. BlueBeat, Inc.*, 765 F. Supp.2d 1198, 1200 n.1 (C.D. Cal. 2010) (citation omitted).

1.      Defendant Bobbala is the Chief Medical Executive at the CSP-SAC, and her duties are primarily administrative in nature.

2.      Plaintiff has never been incarcerated at CSP-SAC.[5]

3.      Defendant Bobbala has never treated Plaintiff nor been involved in Plaintiff's medical care.

4.      During his deposition, concerning whether Defendant Bobbala provided Plaintiff any medical care, Plaintiff testified: "I have no idea. She might have. I don't know."

5.      During his deposition, asked how Defendant Bobbala violated Plaintiff's constitutional rights, Plaintiff testified: "How can I answer that? I mean I'm not there with her; I'm in prison."

6.      During his deposition, asked what evidence Plaintiff had establishing Defendant Bobbala had been involved in his medical care, Plaintiff testified: "You tell me. She's your defendant."

7.      At all times relevant to this action, Defendant Gates was the Chief of the HCCAB within the CCHCS. Through her employment with the CCHCS, Gates is the custodian of records.

8.      The HCCAB is responsible for providing the headquarters-level response to health care grievances submitted by state prisoners.

9.      Plaintiff submitted several healthcare grievances related to his diet which received headquarters-level responses provided by the HCCAB.

10.      Headquarters-level responses to inmate health care grievances are prepared by staff of the HCCAB. The responses to routine grievances were generally not prepared, reviewed, or signed by Defendant Gates; rather HCCAB staff were authorized to sign on her behalf.

11.      Defendant Gates had no prior knowledge of Plaintiff's healthcare grievances prior to the filing of this action.

12.      Defendant Gates's review of Plaintiff's health care grievances concerning his diet and his food allergies, and the responses thereto, reveal that Gates was not personally involved

---

[5] Plaintiff testified during his deposition that he has been incarcerated at California State Prison-Los Angeles, the California Substance Abuse Treatment Facility, and Valley State Prison since 2010. Deposition of Bazzo, at 15-16.

and the signatures on the responses to Plaintiff's grievances are not Defendant Gates's signature but those authorized to sign for her.

13.     During his deposition, concerning whether Defendant Gates had ever been involved in his medical care, Plaintiff testified: "You tell me." Plaintiff also testified "You tell me," in response to an inquiry about how Gates violated his constitutional rights.

14.     Defendant Gates is not a medical professional and does not have medical training.

15.     Plaintiff is allergic to peanuts.

16.     Plaintiff learned he was allergic to peanuts when he was six years old in 1947.

17.     In 1947, after consuming peanuts, Plaintiff stopped breathing and experienced swelling of the throat and tongue.

17.     Thereafter, Plaintiff has avoided peanuts and has not suffered from an allergic reaction since.

18.     An inmate's PCP or designee evaluates inmate patients who request a special diet due to claimed food intolerance or allergy to verify the presence of a food allergy or intolerance via objective clinical means. If the PCP determines the patient has a severe food allergy based on objective and verifiable information, the PCP shall determine whether the allergy can be appropriately managed by educating the patient to avoid the identified food or if other intervention, such as a nutrition supplement, is warranted. In extreme cases where the patient does not tolerate the supplement, the patient may require meals to be provided as a medical diet.

19.     Plaintiff was seen by a nurse practitioner on April 18, 2019. It was noted that he had a peanut allergy. It was noted Plaintiff had an epi pen available and was aware to avoid foods with peanuts. It was further noted that Plaintiff "has not had any recent reactions with peanuts lately." No determination was made that he needed to be provided with any special diet.

20.     Plaintiff was seen by a nurse practitioner again on May 13, 2019. He was diagnosed with a peanut allergy which was described as stable, and it was noted that he had an epi pen which he denied having to recently use. No determination was made that he needed to be provided with any special diet.

21.     Plaintiff was seen again by a nurse practitioner on June 5, 2019. He was diagnosed

with a peanut allergy and advised to avoid peanut foods and peanuts. No determination was made

that he needed to be provided with any special diet.

22.     Plaintiff was again seen by a nurse practitioner on July 22, 2019. He was again

diagnosed with a peanut allergy. It was noted that there had been no recent exposure to peanuts or

reactions to them. Again, no determination was made that he needed to be provided with any

special diet.

23.     Plaintiff saw a nurse practitioner again on August 8, 2019. It is noted that Plaintiff

stated that he "hates the food" at the prison. He was diagnosed with a peanut allergy, and the plan

was again to avoid peanuts. No determination was made that he needed to be provided with any

special diet.

24.     Plaintiff was again seen by a nurse practitioner on September 10, 2019. He was

diagnosed with a peanut allergy, and the plan was simply to avoid foods containing peanuts. No

determination was made that he needed to be provided with any special diet.

25.     Plaintiff saw a nurse practitioner again on November 26, 2019. He was diagnosed

with a peanut allergy, and it was noted to be stable on examination and no recent peanut exposure

was reported. Once again, no determination was made that he needed to be provided with any

special diet.

26.     Plaintiff saw a nurse practitioner again on August 12, 2020. He was diagnosed

with a peanut allergy and instructed to avoid peanuts. Once again, no determination was made

that he needed to be provided with any special diet.

**VIII.   DISCUSSION**

**A.  Plaintiff's Assertions Involving Defendants' Discovery Responses**

Plaintiff argues that Defendants' discovery responses support his summary judgment

motion. However, Plaintiff's assertions in his motion, and testimony at his deposition[6]—that

Defendants' responses to his various discovery requests, including requests for admission, were

improper because the affirmative defenses and objections asserted are "legalese"—are misplaced.

As Plaintiff was advised in the Discovery and Scheduling Order issued December 11, 2023,

---

[6] *See* Deposition of Bazzo, at 43-44, 46-47.

1    "[t]he deadline for the completion of all discovery, including filing all motions to compel

2    discovery, is August 11, 2024." (Doc. 53 at 2.) But Plaintiff did not file a motion to compel

3    further responses from Defendants and thus the Court has made no determination that any

4    response to discovery propounded by Plaintiff to Defendants was improper or incomplete. *See*

5    *Burch*, 433 F. Supp.2d at 1119 ("statements in declarations based on speculation or improper

6    legal conclusions, or argumentative statements, are not facts and likewise will not be considered

7    on a motion for summary judgment" (emphasis omitted)); *Burghardt-Cobb v. Inch*, No. 1:17-cv-

8    01563-DAD-SKO, 2020 WL 1974264, at *1 n.1 (E.D. Cal. Apr. 24, 2020) ("Here, although

9    plaintiff submitted a statement of disputed facts, each of the disputes noted by plaintiff therein are

10   actually legal arguments, do not challenge the veracity of the underlying facts, or are irrelevant ...

11   [t]he court therefore considers the material facts of this case to be undisputed"). Plaintiff cannot

12   now be heard on his assertions concerning improper or incomplete discovery responses and those

13   assertions do not amount to evidence supporting his claims. *See, e.g.*, *Arena v. Cervantes*, No.

14   1:21-cv-00928-JLT-BAM (PC), 2023 WL 3254062, at *3 (E.D. Cal. May 4, 2023) (ruling on

15   request by plaintiff to stay briefing on defendants' summary judgment motion pending outcome

16   of discovery dispute, the Court noted "Plaintiff did not file a motion to compel or otherwise alert

17   the Court of a potential discovery dispute until the filing of his … motion to stay …. Plaintiff

18   does not otherwise explain his failure to file a motion to compel before the discovery deadline");

19   *Walker-Abrams v. Baca*, No. 3:12-cv-00021-MMD-CSD, 2022 WL 17494197, at *3 (D. Nev.

20   Oct. 18, 2022) (same); *Becton v. Corrs. Corp. of Am.*, No. 3:16-2282, 2017 WL 4875287, at *4

21   (M.D. Tenn. Oct. 5, 2017) (same); *Mitchell v. Gilbert*, No. C09-5080BHS/JRC, 2010 WL

22   4483268, at *2 (W.D. Wash. Sept. 8, 2010) (same).

23        In sum, any argument by Plaintiff that Defendants' alleged failure to properly respond to

24   Plaintiff's discovery requests supports Plaintiff's summary judgment motion, or Plaintiff's

25   opposition to Defendants' summary judgment motion, is improper. Plaintiff failed to file a motion

26   to compel and, as such, the Court had no opportunity to address any purported discovery dispute.

27              **B.  Defendant Bobbala Did Not Violate Plaintiff's Constitutional Rights**

28        Plaintiff's motion lacks supporting evidence or a sufficient demonstration that a genuine

dispute of material fact exists entitling Plaintiff to summary judgment against Defendant Bobbala. Fed. R. Civ. P. 56(a). For example, while Plaintiff argues Defendant Bobbala "is in charge of nutrition for CDCR," he offers no evidence other than his stated belief. But Plaintiff's mistaken belief does not amount to sufficient evidence. *See, e.g.*, *Nelson*, 83 F.3d at 1081-82 ("mere allegation and speculation do not create a factual dispute for purposes of summary judgment"). Here, Defendant Bobbala declares under penalty of perjury that she is the Chief Medical Examiner at CSP-SAC, rather than the individual "in charge of nutrition for CDCR" or any similar department-wide position. (Doc. 65-5 at 1, ¶ 1.) And Bobbala declares that she is "generally familiar with the diet provided to inmates in the custody of CDCR" (Doc. 65-5 at 2, ¶ 3), not that she oversees inmate diets statewide.

Further, Plaintiff generally argues that because Bobbala has purportedly declared the food served to CDCR inmates is "toxic," he is entitled to summary judgment. Although he does not explicitly identify the evidence upon which he bases his argument, the Court presumes Plaintiff's assertions rely upon Exhibit B to his original complaint: minutes from the "CDCR Heart Healthy Menus Meeting Minutes" dated October 28, 2016. (*See* Doc. 1 at 39.) However, a review of the document does not support Plaintiff's claim in the manner he intends. Rather, the meeting minutes simply reveal Bobbala was one of several individuals in attendance and that she referred to studies conducted over several decades concerning an increase in autoimmune disorders and studies correlating high carbohydrate diets to diabetes, obesity, hypertension and similar ailments, before stating that the "CDCR menu serves high amounts of simple sugars and it is detrimental to the prison health population. The canteen is also worsening this effect." (*Id*.) This Court finds it is not reasonable to infer from this evidence that Bobbala's statement at a meeting establishes a genuine dispute of material fact that Bobbola acted with deliberate indifference concerning Plaintiff's Eighth Amendment claims. *See Richards*, 602 F. Supp. at 1244-45 (inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn). Considering the foregoing, the undersigned concludes Plaintiff is not entitled to summary judgment. *See Wilson*, 501 U.S. at 303 (1991); *Farmer*, 511 U.S. at 837.

1    Concerning Defendants' summary judgment motion, it is supported by sufficient

2  evidence, including the declarations of Defendant Bobbala, Plaintiff's medical record, and his

3  deposition testimony. Therefore, Defendants have met their initial responsibility and the burden

4  shifts to Plaintiff to establish that a genuine issue as to any material facts actually does exist.

5  *Matsushita*, 475 U.S. at 586.

6    Specifically, Defendants have established that Defendant Bobbala is the Chief Medical

7  Executive at CSP-SAC, is not tasked with providing Plaintiff with medical care, and has never

8  treated Plaintiff. *See* UDF 1-6. Further, Bobbala's declaration indicates her review of Plaintiff's

9  "health care appeals records does not indicate that he ever submitted a health care grievance that

10  was received by CSP-SAC or which I would have ever responded to." (Doc. 65-5 at 3, ¶ 4.) And

11  Plaintiff's deposition testimony supports Defendants' evidence. *See* UDF 4-6 (when asked at

12  deposition to confirm whether Bobbala treated him, Plaintiff disclaimed any knowledge).

13                    Eighth Amendment Conditions of Confinement

14    Significantly, Defendants have established evidence demonstrating that Defendant

15  Bobbala never treated Plaintiff, Plaintiff was never incarcerated where Bobbala is employed, and

16  Bobbala never had occasion to weigh in on Plaintiff's asserted need for a special diet. UDF 1-6.

17  Therefore, Plaintiff has failed to establish a genuine issue of material fact as to Bobbala's

18  personal involvement in a constitutional violation. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)

19  (plaintiff must prove defendant, through own individual actions, caused or personally participated

20  in causing the deprivation of a constitutional right); *Rizzo v. Goode*, 423 U.S. 362, 373-75 (1976)

21  (a plaintiff must show a causal connection or link between the actions of the defendants and the

22  deprivation alleged to have been suffered by the plaintiff); *Johnson v. Duffy*, 588 F.2d 740, 743

23  (9th Cir. 1978) ("[a] person 'subjects' another to the deprivation of a constitutional right, within

24  the meaning of section 1983, if he does an affirmative act, participates in another's affirmative

25  acts, or omits to perform an act which he is legal required to do that causes the deprivation of

26  which complaint is made"); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (supervisors may

27  be held liable only if they "participated in or directed the violations, or knew of the violations and

28  failed to act to prevent them"); *see, e.g.*, *Demerson v. Block*, No. 95-55565, 1997 WL 30246, at

1    *1 (9th Cir. Jan. 24, 1997) ("Upon our review of the record, we conclude that Demerson failed to

2    establish a genuine issue as to defendant Block's personal participation in the alleged Eighth

3    Amendment violations. Accordingly, the district court properly granted summary judgment in

4    favor of Block," citing *Taylor*); *Sonia v. Ranier*, No. 3:23-cv-5220-RSL-TLF, 2024 WL

5    40008665, at *6 (W.D. Wash. Aug. 12, 2024) ("Although Plaintiff names Russell as a defendant

6    for his supervisory role, she fails to show either personal involvement in the constitutional

7    deprivation or that Russell was involved less directly -- by supervising others as described in the

8    other factual scenarios … that would show a sufficient causal connection between Russell's

9    alleged wrongful conduct and the constitutional violation"), recommendation adopted at 2024

10    WL 40008589 (Aug. 30, 2024).

11        Further, the undisputed evidence reflects that an inmate's primary care provider or

12    designee is the individual tasked with determining whether an inmate requesting a special diet

13    based upon food intolerance or sensitivity is entitled to a special diet. UDF 18.[7] The undisputed

14    evidence also establishes that Plaintiff's allergy was properly managed, and a special diet was not

15    warranted. UDF 19-26. Plaintiff offers nothing more than conclusions and speculation in

16    opposition to Defendants' evidence. *Cafasso,* 637 F.3d at 1061 ("To survive summary judgment,

17    a plaintiff must set forth non-speculative evidence of specific facts, not sweeping conclusory

18    allegations"); *Soremekun*, 509 F.3d at 984 (same); *Nelson*, 83 F.3d at 1081-82 (same). Here, there

19    is no evidence to indicate Bobbala denied Plaintiff "the minimal civilized measures of life's

20    necessities" or that she acted with deliberate indifference. *Hudson*, 503 U.S. at 9; *Keenan*, 83 F.3d

21    at 1089; *Wilson*, 501 U.S. at 303.

22        Eighth Amendment: Deliberate Indifference to Serious Medical Need

23        The speculative and conclusory evidence proffered by Plaintiff in opposition to

24    Defendants' summary judgment motion does not show that Defendant Bobbala was aware of any

25    risk to Plaintiff or that she disregarded that risk. *Toguchi*, 391 F.3d at 1057 (quoting *Farmer*, 511

26    U.S. at 837). Even assuming Bobbala should have been aware of the risk, Defendants' evidence

27

28

---

[7] In her declaration, Defendant Bobbala states she is familiar with CDCR's policy regarding food allergies and intolerance, and states as follows:

establishes Bobbala was not aware and thus she has not violated Plaintiff's constitutional rights under the Eighth Amendment. *Toguchi*, 391 F.3d at 1057. Simply put, Plaintiff fails to establish a genuine issue of material dispute concerning any wrongful conduct on Bobbala's part. *Wilhelm*, 680 F.3d at 1122; *see Jett*, 439 F.3d at 1096.

In sum, Defendants have met their initial burden of establishing that Defendant Bobbala did not violate Plaintiff's rights under the Eighth Amendment. *See* Fed. R. Civ. P. 56(c)(1)(A); *Celotex Corp.*, 477 U.S. at 322. Plaintiff has failed to meet his burden of production to establish that a genuine dispute of material fact exists. *See Matsushita*, 475 U.S. at 586. Thus, Defendant Bobbala is entitled to summary judgment. *Id.* at 587; *Celotex Corp.*, at 322.

### C. Defendant Gates Did Not Violate Plaintiff's Constitutional Rights

Plaintiff's motion likewise lacks supporting evidence or a sufficient demonstration that a genuine dispute of material fact exists entitling Plaintiff to summary judgment against Defendant Gates. Fed. R. Civ. P. 56(a). Plaintiff argues Gates denies every grievance submitted for review and that Gates personally denied his health care grievances as pertains to his diet, but this too merely is conclusory and speculative. *Cafasso*, 637 F.3d at 1061; *Soremekun*, 509 F.3d at 984; *Nelson*, 83 F.3d at 1081-82. Plaintiff is not entitled to summary judgment on this showing.

Concerning Defendants' summary judgment motion, it is supported by sufficient evidence, including the declarations of Defendant Gates, Plaintiff's health care grievances, and his deposition testimony. Therefore, Defendants have met their initial responsibility and the burden shifts to Plaintiff to establish that a genuine issue as to any material facts actually does exist. *Matsushita*, 475 U.S. at 586. Plaintiff has not met his burden.

Specifically, Defendants have established that Defendant Gates was the Chief of the HCCAB during the relevant period,[8] that headquarters-level responses are prepared by HCCAB staff and staff are authorized to sign on Gates's behalf. UDF 7, 10. Further, Gates's review of Plaintiff's health care grievance responses concerning his diet and food allergies establishes that

---

[8] At his deposition, Plaintiff testified Gates was the "chief" of "Risk management," who "takes all the appeals and she denies them all because she doesn't want CDCR to go into any risk of giving anybody any money or anything that would promote or encourage a lawsuit, obviously. So she denies everything. Point blank." Deposition of Bazzo, at 44-46.

25

1    Gates did not sign them. UDF 12. (*See also* Doc. 65-4 at 6, 14, 19, 25, 32, 36.) And Plaintiff's

2    deposition testimony supports Defendants' evidence. *See* UDF 13 (when asked at deposition to

3    confirm whether Gates was involved in his treatment, Plaintiff disclaimed any knowledge).

4                            Eighth Amendment Conditions of Confinement

5            "A supervisor may be liable only if (1) he or she is personally involved in the

6    constitutional deprivation, or (2) there is a sufficient causal connection between the supervisor's

7    wrongful conduct and the constitutional violation." *Crowley v. Bannister*, 734 F.3d 967, 977 (9th

8    Cir. 2013) (citation and quotation marks omitted); accord *Lemire v. Cal. Dep't of Corrs. &*

9    *Rehab.*, 726 F.3d 1062, 1074-75 (9th Cir. 2013. "Under the latter theory, supervisory liability

10   exists even without overt personal participation in the offensive act if supervisory officials

11   implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is

12   the moving force of a constitutional violation." *Crowley*, 734 F.3d at 977 (citing *Hansen v. Black*,

13   885 F.2d 642, 646 (9th Cir. 1989)) (internal quotation marks omitted).

14           Here, Defendant Gates was not personally involved in the denial of Plaintiff's health care

15   grievances[9] and delegated signing authority to HCCAB staff. UDF 7, 10;[10] *Crowley*, 734 F.3d at

16   977; *Taylor*, 880 F.2d at 1045. Plaintiff also argues that as a supervisor, Gates is liable. However,

17   liability may not be imposed on supervisory personnel for the actions or omissions of their

18   subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676-77. Plaintiff has

19   failed to establish a genuine issue of material fact that Gates implemented a policy so deficient

20   the policy itself is a repudiation of his rights and a moving force behind any constitutional

21   violation. *Crowley*, 734 F.3d at 977. Plaintiff's assertions that Gates denies all grievances to avoid

22   risk is mere speculation. *Cafasso*, 637 F.3d at 1061; *Soremekun*, 509 F.3d at 984; *Nelson*, 83 F.3d

23   at 1081-82; *see, e.g., Atyman v. Pfieffer*, No. 1:23-cv-00382-JLT-BAM, 2023 WL 7005270, at *2

24   _____

     [9] Prisoners do not have "a separate constitutional entitlement to a specific prison grievance procedure." *Ramirez v.*

25   *Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (citing *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988)); *Jordan v.*
     *Asuncion*, No. CV 17-1283 PSG (SS), 2018 WL 2106464, at *3 (C.D. Cal. May 7, 2018) ("[A] prisoner [does not]

26   have a constitutional right to any particular grievance outcome").

27   [10] Plaintiff argues Gates personally signed a January 16, 2019, health care response to his grievance and is lying.
     However, a review of the response to Grievance Tracking No. SATF HC 18001722 reveals that an individual with
     the initials "ab" or "ob" signed the response "for" Gates (*see* Gates Decl. at 5-6); it is similar to the responses dated

28   March 1, 2019 concerning Grievance Tracking No. SATF 18001896 (*id*. at 18-19) and November 22, 2019,
     concerning Grievance Tracking No. SATF HC 19001200 (*id*. at 31-32) wherein another individual signed for Gates.

                                                        26

(E.D. Cal. Oct. 24, 2023) (recommending dismissal for failure to state a claim, finding "Plaintiff alleges that the warden 'knew' or 'should have known' or 'absolutely knew' about conditions. Plaintiff merely relies on the Warden's supervisory responsibilities to ensure the safety and health of the prisoners, but this claim is based on respondeat superior …. Such conclusory allegations are insufficient to state a causal link between such defendant and the claimed constitutional violation"), recommendation adopted at 2023 WL 8478510 (Dec. 7, 2023).

Moreover, there is no evidence to indicate that Gates's delegation of signing authority to other HCCAB staff amounts to directing constitutional violations. *Cf. Douglass v. Garden City Cmty. Coll.*, 652 F. Supp.3d 1329, 1346 (D. Kan. 2023) (plaintiff presented evidence to establish "a genuine issue of material fact whether the Board [of Trustees] delegated its decision-making authority to [the college president] Swender and whether Swender caused a constitutional violation by ratifying [college chief of police] Dozier's decision to issue the Notice [of Trespass to plaintiff] and enforcing it until July 27, 2018"). Thus, the undersigned finds there is no genuine dispute of material fact to indicate Gates denied Plaintiff "the minimal civilized measures of life's necessities" or that she acted with deliberate indifference. *Hudson*, 503 U.S. at 9; *Keenan*, 83 F.3d at 1089; *Wilson*, 501 U.S. at 303.

Eighth Amendment: Deliberate Indifference to Serious Medical Need

The speculative and conclusory evidence proffered by Plaintiff does not show that Defendant Gates was aware of any risk to Plaintiff or that she disregarded that risk such that her conduct arises to deliberate indifference. *Toguchi*, 391 F.3d at 1057 (quoting *Farmer*, 511 U.S. at 837). Even assuming Gates should have been aware of the risk, Defendants' evidence establishes Gates was not aware and thus she has not violated Plaintiff's constitutional rights under the Eighth Amendment. *Id.* (quoting *Gibson*, 290 F.3d at 1188). Plaintiff fails to establish a genuine dispute concerning any wrongful conduct on Gates's part. *Wilhelm*, 680 F.3d at 1122; *see Jett*, 439 F.3d at 1096.

In sum, Defendants have met their initial burden of establishing that Defendant Gates did not violate Plaintiff's rights under the Eighth Amendment. *See* Fed. R. Civ. P. 56(c)(1)(A); *Celotex Corp.*, 477 U.S. at 322. Plaintiff has failed to meet his burden of production to establish

that a genuine dispute of material fact exists. *See Matsushita*, 475 U.S. at 586. Thus, Defendant

Gates is entitled to summary judgment. *Id.* at 587; *Celotex Corp.*, at 322

### D. Further Observations

To the extent Plaintiff's opposition to Defendants' summary judgment motion relies solely

on the allegations asserted in his original complaint, such reliance is insufficient to meet his

burden of production. Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586, n.11. Stated another

way, the mere fact the Court found that Plaintiff stated plausible claims following screening of his

complaint does not amount to evidence upon which Plaintiff can rely in opposing summary

judgment.

Next, to the extent Plaintiff offers medical opinions or conclusions that he is entitled to a

special diet, dietary supplement or substitution, or that he was being provided an insufficient

quantity of food, because Plaintiff is a layperson,[11] he is not qualified to offer medical opinions or

conclusions. Fed. R. Evid. 701. *See, e.g., Douglas v. Martel*, No. CIV S09-3411 KJM CKD, 2011

WL 3875646, at *6-7 (E.D. Cal. Aug. 31, 2011) (noting that plaintiff's physicians assessed

whether a special diet was necessary due to his allergies to fish and nuts and finding no evidence

of deliberate indifference; noting also that in "his opposition, plaintiff expresses his lay opinion

---

[11] At Plaintiff's deposition, the following colloquy occurred:

> Q. And do you have any medical training?
> A. Pardon?
> Q. Have you ever had medical training?
> A. Medical training?
> Q. Yes.
> A. All my life.
> Q. What kind of medical training have you had?
> A. Enough to know what I'm talking about.
> Q. Have you - - do you have any degrees in medicine?
> A. I'm not going to answer that I told you. It's irrelevant. Totally irrelevant.
> Irrelevant. Tell me the foundation and then I'll answer. You got no foundation to
> answer that. … [¶] There is nothing about my education or anything that would
> impinge on what these people are doing or have done to me. So it doesn't matter.
> [¶] Q. So I take it you - - you're not going to answer whether you've got a
> medical degree of some kind?
> A.   Why would I answer that? It doesn't - - doesn't interest you at all. Why
>      would it interest you?
> Q.  You're bringing medical claims. I'm trying to establish whether you have
>     medical training.

Deposition of Bazzo, at 14-15.

1    that these defendants' medical judgment to deny him a substitute meal was a dereliction of their

2    duties as physicians. But his relatively well-informed disagreement with defendants' decision is

3    not enough to hold them liable in the absence of any evidence of actual indifference or, more

4    importantly, any harm," citing *Toguchi*). Because this Court may only consider in connection

5    with ruling on the cross motions for summary judgment evidence that could be presented at trial

6    in admissible form (*see Bliesner v. Commc'n Workers of Am.*, 464 F.3d 910, 915 (9th Cir.2006)),

7    and because Plaintiff may not present at trial through his own testimony the functional equivalent

8    of medical opinions (*e.g.*, *Salazar v. Kokor*, No. 1:14-cv-00211-AWI-MJS (PC), 2017 WL

9    2984813, at *2 (E.D. Cal. July 13, 2017)), Plaintiff's opinions about his entitlement to a special

10    diet are disregarded. In all events, the evidence establishes that while Plaintiff was diagnosed with

11    a peanut allergy in 1947 following an allergic reaction, he has avoided peanuts in the interim and

12    has not suffered a similar allergic reaction since that time. *See* UDF 15-17.[12]

13                          **E.  Plaintiff's Claims Appear Misdirected**

14          As noted above, Defendants have established that an inmate's primary care provider or

15    designee is the individual tasked with determining whether an inmate requesting a special diet

16    based upon food intolerance or sensitivity is entitled to a special diet. *See* UDF 18. Further, their

17    evidence establishes that Plaintiff's medical providers were aware of his peanut allergy,

18    counseled him to avoid foods containing peanuts, and never determined Plaintiff should be

19    provided with a special diet. *See* UDF 19-26. [13]

20          Here, after discovery and motion practice, Plaintiff's claims appear directed toward

21    improper defendants. At bottom, Plaintiff claims he is entitled to a special diet, but those claims

22    would appear more properly directed to his primary care providers or their designees. *See, e.g.*,

23    *Peasley v. Rippberger*, No. 18-CV-03498-LHK, 2020 WL 5240868, at *15 (N.D. Cal. Aug. 17,

24    2020) (stating the plaintiff may have a claim against some San Quentin staff member for the

25

26    _____
      [12] Plaintiff testified he has suffered "skin reactions" "like a rash" "[o]n and off" during his incarceration. Deposition of Bazzo, at 29-30.

27
      [13] The medical record reveals that Plaintiff regularly denied any barriers to meals. (*See* Soto. Decl. at 13, 16, 18, 21,

28    23.)

failure to administer an afternoon dose of insulin, but that plaintiff named only Nurse Rippberger as a defendant, Nurse Rippberger attested in a sworn document that she did not know plaintiff needed an afternoon corrective dose of insulin, and plaintiff only speculated that Nurse Rippberger knew of plaintiff's medical need).

### F.  Summary of Summary Judgment Findings

The undersigned finds Plaintiff's summary judgment motion should be denied, and Defendants' summary judgment motion should be granted. Further, given these findings, the Court declines to address Defendants' argument concerning qualified immunity (Doc. 65-1 at 11-13) and Plaintiff's subsequent motion for injunctive relief (Doc. 70). The Court addresses Plaintiff's "motion for entry of default" related to his summary judgment motion below.

### IX.    PLAINTIFF'S MOTION FOR DEFAULT

On November 27, 2024, Plaintiff filed a document titled "Notice of Motion and Motion for Entry of Default Pursuant Rand Warning Due to Defendants' Failure to Oppose or Reply to Bazzo's Motion for Summary Judgment or in the Alternative, Adjudication filed October 21, 2024; Alternatively, Reply and Opposition to Moot Motion for Summary Judgment by Defendants." (Doc. 69.) Defendants filed an opposition on December 17, 2024. (Doc. 74.)

By his motion, Plaintiff appears to seek entry of default for Defendants' alleged failure to timely oppose Plaintiff's summary judgment motion, and/or that Defendants do not have the right to file a motion for summary judgment in lieu of an opposition to his summary judgment motion. Defendants contend they filed a timely opposition to Plaintiff's summary judgment motion.

Plaintiff filed his summary judgment motion on October 30, 2024. Therefore, Defendants' opposition was due 21 days later. *See* Local Rule 230(*l*). 21 days from October 30, 2024, is November 20, 2024. Defendants' opposition to Plaintiff's summary judgment was filed on November 20, 2024 (Doc. 66) making it timely filed. To the extent Plaintiff argues Defendants' filing of their own summary judgment motion in the period between Plaintiff's motion and Defendants' opposition to his motion being filed is improper, his argument is misplaced. The Discovery and Scheduling order issued December 11, 2023, provided an October 21, 2024, deadline for the filing of all dispositive motions for any party; that deadline was subsequently

1    extended to November 12, 2024, by the Court's October 21, 2024, order. (*See* Doc. 63.)

2    Thereafter, Defendants timely filed their summary judgment motion on November 12, 2024.

3    (Doc. 65.) Moreover, nothing in *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), provides for the

4    default Plaintiff seeks against Defendants here. Defendants timely opposed Plaintiff's summary

5    judgment motion and Defendants' summary judgment was not filed in lieu of an opposition.

6    Simply put, there is no basis upon which to enter default against Defendants and Plaintiff's

7    motion will be denied.

8

9

10                            *Remainder of This Page Intentionally Left Blank*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **X.    CONCLUSION AND RECOMMENDATION**

2    Accordingly, the Court **HEREBY ORDERS**:

3    1.   Plaintiff's "Motion for Entry of Default Pursuant Rand Warning" (Doc. 69) is

4         **DENIED**.

5    Further, based on the foregoing, the Court **HEREBY RECOMMENDS**:

6    1.   Plaintiff's summary judgment motion (Doc. 64) be **DENIED**;

7    2.   Defendants' summary judgment motion (Doc. 65) be **GRANTED**; and

8    3.   That judgment be entered in favor of Defendants and the Clerk of the Court be

9         directed to close this case.

10   These Findings and Recommendations will be submitted to the United States District

11   Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  **Within 14 days**

12   after being served with a copy of these Findings and Recommendations, a party may file written

13   objections with the Court. Local Rule 304(b). The document should be captioned, "Objections to

14   Magistrate Judge's Findings and Recommendations" and **shall not exceed 15 pages** without

15   leave of Court and good cause shown. The Court will not consider exhibits attached to the

16   Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the

17   exhibit in the record by its CM/ECF document and page number, when possible, or otherwise

18   reference the exhibit with specificity. Any pages filed in excess of the 15-page limitation may be

19   disregarded by the District Judge when reviewing these Findings and Recommendations under 28

20   U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result

21   in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

22   IT IS SO ORDERED.

23   Dated:   **April 11, 2025**

24                                         UNITED STATES MAGISTRATE JUDGE

25

26

27

28